# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL CASE NO. 1:10cr66-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| RAYMOND DANGELO ALLEN. ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Judgment of Acquittal Notwithstanding the Verdict [Doc. 240].

## I. PROCEDURAL BACKGROUND

On October 5, 2010, the grand jury returned a bill of indictment charging that from in or around January of 2010 and continuing until on or about June 10, 2010, in Buncombe and McDowell Counties, the Defendant Raymond Dangelo Allen ("Allen"), Reggie Lamont Battle ("Battle"), Shawn Terrill Boyce ("Boyce"), Mario Lamont Carson ("Carson"), Jonathan Keith Daniels ("Daniels"), Derrick Edward Forney ("Forney"), Brandon Dion Ledbetter ("Ledbetter"), Carlos Keno Twitty ("Twitty"), Brandon Michael Walker ("Walker"), Nicholas Raymond Wilkerson ("Nicholas Wilkerson"), and N'namdi Eva Young ("Young"), knowingly and intentionally conspired

with each other and with Willie Jermille Chappell ("Chappell"), Chrisshawn DeLee Folston ("Folston"), Markeenus Cleavon Wilkerson ("Markeenus Wilkerson"), Joshua Aurrick Toms ("Toms"), and Kingsley Eke Agbaeze ("Agbaeze")[1] to possess with intent to distribute at least fifty grams of a mixture or substance containing a detectable amount of cocaine base, commonly referred to as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Doc. 1]. Allen proceeded to trial on June 27, 2011. The Government presented twenty-seven witnesses in its case-in-chief, including three lab technicians, thirteen law enforcement officers, three confidential informants, and eight co-conspirators. At the close of the trial, the jury returned a verdict of guilty as charged.

Allen now moves pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal notwithstanding the verdict, arguing that there is insufficient evidence to show his knowing participation in the charged conspiracy. [Doc. 240]. The Government opposes Allen's motion. [Doc. 254].

Having been fully briefed, this motion is now ripe for disposition.

---

[1] Chappell, Folston, Markeenus Wilkerson, Toms, and Agbaeze were indicted in a separate criminal case. See Criminal Case No. 1:10cr32 (W.D.N.C.). All of Allen's co-conspirators pled guilty prior to his trial.

## II. FACTUAL BACKGROUND

The evidence at trial established four inter-related tiers of an organization responsible for trafficking large quantities of crack cocaine in Buncombe and McDowell Counties. The first tier of dealers, which included Boyce, Carson, Forney, Ledbetter, Twitty, Walker, Nicholas Wilkerson and Young, sold $5 and $20 rocks of crack cocaine on the streets of the Hill Community in Marion, North Carolina. The second tier, which included Toms, Markeenus Wilkerson and Agbaeze, sold 1/8 ounce and 1/4 ounce quantities of crack cocaine to the dealers in the Hill Community. The third tier consisted of Folston, who sold one to four ounce quantities of crack cocaine to the larger dealers in the Marion area. The fourth and top tier of the organization included Chappell, who acted as Folston's primary source of supply for four to eight ounce quantities of crack cocaine. He was assisted by Daniels and also sold crack cocaine to Battle.

At trial, Folston testified that he purchased 1.5 ounces of crack cocaine from Allen on May 17, 2010 when he could not obtain the crack cocaine he needed from Chappell. Folston further testified that he purchased an additional two ounces of crack cocaine from Allen on May

18, 2010 when he again could not obtain the crack cocaine he needed from Chappell. Folston's testimony regarding these buys was corroborated by Robin Lynette Anderson, a confidential informant who accompanied Folston on each trip to purchase crack cocaine from Allen in Asheville. The Government presented information from a GPS tracking device used on the vehicle driven by Folston and Anderson on each of these trips in order to corroborate Folston's and Anderson's testimony. Additionally, members of law enforcement, including DEA Special Agent Dan Guzzo and Task Force Officer Tracy Crowe, testified regarding the physical surveillance that was conducted in anticipation of Folston's buys from Allen.

## III. STANDARD OF REVIEW

When a defendant challenges a jury's verdict on the basis of insufficient evidence, "the verdict will be sustained if, when the evidence is viewed in the light most favorable to the government, there is substantial evidence to support it." United States v. Sullivan, 455 F.3d 248, 260 (4th Cir. 2006). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010) (quoting United States v. Burgos, 94 F.3d

849, 862 (4th Cir. 1996) (en banc)).  In determining the issue of substantial evidence, the Court does "not reweigh the evidence or the credibility of the witnesses, but assume[s] that the jury resolved all contradictions in the testimony in favor of the Government." United States v. Roe, 606 F.3d 180, 186 (4th Cir.), cert. denied, 131 S.Ct. 617, 178 L.Ed.2d 448 (2010).

## IV. ANALYSIS

In order to convict a defendant for the crime of conspiracy to distribute narcotics, the Government must show beyond a reasonable doubt: "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law . . .; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy." United States v. Hickman, 626 F.3d 756, 763 (4th Cir. 2010) (internal quotation marks and citation omitted).  Once the Government proves the existence of a conspiracy, "the evidence 'need only establish a slight connection between the defendant and the conspiracy to support conviction.'" United States v. Kellam, 568 F.3d 125, 139 (4th Cir.), cert. denied, 130 S.Ct. 657, 175 L.Ed.2d 501 (2009) (quoting United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992)).

In the present case, Allen argues that, at best, the Government only proved that he sold 3.5 ounces of crack cocaine over a two-day period to Folston. Allen argues that the Government failed to present any evidence, much less substantial evidence, that he had any knowledge of the charged conspiracy or of Folston's intent to distribute the crack cocaine. [Doc. 240 at 7-8].

By his motion, Allen essentially asserts that the Government was required to produce direct evidence of his knowledge of both the conspiracy and Folston's intent to distribute the crack cocaine in order to convict him of the conspiracy charge. It is well-established, however, that proof of a "tacit or mutual understanding" is sufficient to establish a conspiratorial agreement, and such proof may be inferred from circumstantial evidence. United States v. Ellis, 121 F.3d 908, 922 (4th Cir. 1997). In determining whether a defendant possessed the requisite knowledge and intent, a jury is entitled to consider several factors, including the defendant's "relationship with other members of the conspiracy, the length of his association, his attitude, conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984).

6

Here, the Government presented substantial evidence to establish the Defendant's knowledge of and participation in the charged conspiracy. The evidence at trial established that Folston regularly purchased crack cocaine for redistribution from Chappell, and that Folston sought to purchase crack cocaine from Allen when he could not obtain the crack cocaine he needed from Chappell. The evidence established that Folston called Allen after the first sale to complain that Allen had shorted him a half ounce. Allen responded that Folston should call him the next time he needed a supply of crack cocaine and he would "straighten it out," thereby creating the reasonable inference that Allen would again supply him with a quantity of crack cocaine for distribution.

The evidence further established that Folston purchased a total of 3.5 ounces of crack cocaine from Allen, a quantity which would have produced over one thousand rocks of crack cocaine for redistribution. The sheer quantity of crack cocaine involved in these transactions is ample support for the jury's conclusion that Allen had knowledge of Folston's intent to redistribute these drugs. See Kellam, 568 F.3d at 141 (finding quantity of drugs relevant to establishing intent to distribute); United States v. Lamarr,

75 F.3d 964, 973 (4th Cir. 1996) (finding 5.72 grams of crack consistent with intent to distribute).

In sum, the Court concludes that the Government presented substantial evidence at trial to establish that Allen understood the unlawful nature of the conspiracy and that he knowingly and intentionally joined in that conspiracy on two occasions. If a defendant "joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before and even though he played only a minor part." United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989). For these reasons, the Defendant's motion for a judgment of acquittal notwithstanding the verdict must be denied.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Judgment of Acquittal Notwithstanding the Verdict [Doc. 240] is **DENIED**.

**IT IS SO ORDERED.**

Signed: August 3, 2011

Martin Reidinger
United States District Judge